## SULLIVAN *v.* CHRYSOLITE SILVER MIN. CO.

*(Circuit Court, D. Colorado.* October 16, 1884.)

PRACTICE—DIRECTING VERDICT—NEGLIGENCE.

When, in an action for personal injuries caused by defendant's negligence, upon the whole testimony the court would not feel justified in sustaining a verdict for the plaintiff, it should direct a verdict for the defendant; and that, although there may be some evidence which would raise a possibility or a suspicion that the plaintiff was entitled to recover.

Motion for New Trial.

*Mr. Morrison,* for plaintiff.

*J. B. Bissell,* for defendant.

BREWER, J., *(orally.)* The case was tried before a jury. At the close of the testimony the jury were directed to return a verdict for the defendant. Plaintiff asks a new trial. It is an action under the statute for damages for negligence causing the death of the ancestor of the plaintiffs. The facts are these: The decedent was one of a party of three working at the bottom of a mine; the signal was given by the shift-boss to lower the cage; it did not come down as quickly, perhaps, as expected. It should be stated, *first,* that at the bottom of the shaft there were two compartments: one a pump compartment, and the other, where they were at work, a cage compartment. If the cage came down in the one compartment anybody under it would be struck. It was perfectly safe for any one, when that cage was descending, to step into the pump compartment; it was also reasonably safe for parties to stand in the corner of the pump compartment, and the cage could pass down without touching. Instructions were given by those in charge that whenever that cage was called for, or was coming down, for the employes to step into the pump compartment, where, of course, there would be no danger. The testimony of one of the two survivors is that, up to the time of this injury, they had always obeyed that order, and gone into the pump compartment. There is no dispute in the testimony but what this order was given to the decedent, and he had been working there for two or three weeks, at least, perhaps more. He stood in the corner of this cage compartment, and, the cage not coming down, for some reason unknown, stepped forward, and as he stepped forward the cage fell, struck and killed him. And it was argued very forcibly by the counsel for the plaintiff that a man in that position was not bound to wait indefinitely. Finding that the cage did not come as called for, he might naturally think there was danger—some trouble about the cage; that it might come down hastily; and might properly jump into or hasten to a place which would be safe; and that it could not be affirmed that it was negligence on his part to take that risk; and several illustrations were cited in respect to a descending elevator. That is all very true, but for the antecedent fact that he had no right to stand in that

corner. It is true, the shift-boss himself stood in another corner, but that was in disobedience to the orders. If he had been standing in a place where by the orders he was authorized to stand, and had simply sought a place of more apparent safety, it might be said that such an act was not negligent; but when, in the first instance, he assumed a place which he was forbidden by the orders of the company to occupy, which was comparatively dangerous, and had failed to take the place which, by like directions, he was required to take, then his action in going from one place to another is at his own risk; he can excuse himself for his action only when he has occupied the place which he had been directed by the company to occupy.

Counsel very earnestly, too, pressed upon the court that, whether the court thought or not that such action was negligent, it was a matter which should be submitted to the judgment of 12 men, that of a jury, and that it ought not to be taken from them, because they being men in daily life, more familiar with practical affairs, would be more apt to decide correctly what was and what was not negligence; and it was urged that it was trespassing upon the province of a jury to take that question from them. I think the rule controlling federal courts—one that is also recognized in some of the state courts—is that when upon the whole testimony, the court would not feel justified in sustaining a verdict for the plaintiff, it should direct a verdict for the defendant; and that, although there may be what is sometimes called a "*scintilla*" of testimony, or something which would raise a possibility or a suspicion that the plaintiff was entitled to recover. The court is responsible for every judgment that is rendered, and should never avoid or shirk that responsibility; and I think much of the complaint which exists to-day against the jury system arises from a hesitation on the part of many judges to assume their full responsibility. A question arises of negligence or otherwise, and the court says it is a question of fact,—let it go to the jury; and although clearly of the opinion that the verdict should be one way or the other, yet they evade the responsibility which properly belongs to it by saying 12 men have said so and so, and it is their province to settle questions of fact. Now, I think that it is the imperative duty of a judge to hold every case before him closely in his own hand, and when satisfied that the verdict should be one way or the other, to see that it is so, and to render judgment accordingly. And in this case, while there was some testimony upon which a jury might find that the defendant was guilty of negligence, although it was not absolutely demonstrative of negligence on its part, yet it seems to me, taking all the testimony together, the court could not do otherwise than affirm that the decedent was himself negligent, and that his negligence contributed to the result.

The motion for new trial will be overruled.